```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
LARRY E. RICHARDS, on behalf of himself  :
and all others similarly situated,       :
                    Plaintiff,           :     06 Civ. 3744 (PAC)
                                         :
     -  against -                        :     OPINION
                                         :     AND ORDER
AXA EQUITABLE LIFE INSURANCE             :
COMPANY f/k/a EQUITABLE VARIABLE         :
LIFE INSURANCE COMPANY,                  :
                    Defendant.           :
-----------------------------------x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Larry E. Richards ("Richards") brings this class action, on behalf of himself and all others similarly situated, against Defendant AXA Equitable Life Insurance Company f/k/a Equitable Variable Life Insurance Company ("AXA"), a New York stock life insurance company with its primary place of business in New York. Plaintiff alleges breach of contract, fraudulent misrepresentation, fraudulent concealment, and unjust enrichment in regards to life insurance policies issued by Defendant for Plaintiff's children. The insurance premiums are alleged to be based on rates charged for smokers, even though the insured were non-smoking children. Defendant now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court grants the motion as to the fraudulent misrepresentation, fraudulent concealment and unjust enrichment claims, and denies it as to the breach of contract claim.

## RELEVANT FACTS[1]

Plaintiff purchased two Adjustable Life Plan policies (the "Policies") from Defendant covering his daughter Vanessa (the "Vanessa Richards Policy") and his son Shane (the "Shane Richards Policy"). The Vanessa Richards Policy was purchased in Ohio in 1985 and the Shane Richards Policy was purchased in West Virginia in 1994.[2] The Policies set fixed monthly premiums and contain maximum cost of insurance rates. Below those maximums, the Policies state that the cost of insurance rate will be "based on the sex, attained age, and rating class of the insured person." Compl. Ex. 1, at Policy pg. 7. The Policies include no other information regarding the cost of insurance or the rating class of the insured. The Policies each include an identical attached application filled out by Plaintiff. The application, which appears to be generic, includes a single question regarding whether the proposed insured smoked cigarettes in the last twelve months (the "Smoking Question"), to which Plaintiff answered "no." Id. at Application pg. 3. The Policies state that "this policy and the attached application…, make up the entire contract." Id. at Policy pg. 15.

Notwithstanding the answer that the children insured were non-smokers, Plaintiff alleges that Defendant determined the cost of insurance, interest and dividend payments under the Policies using a "smoker" risk rating classification. This conduct is part of a nationwide "Juvenile Smoker Rate Scheme" implemented by Defendant. Id. ¶¶ 1, 8. As another facet of the scheme, adult non-smokers who purchase policies from Defendant receive more favorable costs of insurance, interest, and dividend payments

---

[1] The facts herein are drawn from allegations in the Plaintiff's Complaint, which are treated as true for purposes of this motion to dismiss, and from the documents attached to the Complaint. Particular paragraphs and documents are cited only where quoted.

[2] Each policy was purchased when the covered child was 5 years old.

than adults who purchased polices from Defendant when they were non-smoking juveniles. In order to gain an adult non-smoking classification, insured persons attaining the age of 18 years must apply for an "upgrade" to a non-smoking adult policy. To obtain such an upgrade to a basic non-smoking rating, the insured person must be completely re-underwritten, and any intervening insurability issues that have arisen may result in denial of the improved risk rating. Id. ¶ 2. To obtain the best possible adult risk classification, an insured person must undergo even more stringent underwriting, even if at time of the juvenile application the insured would have met the requirement for the best adult risk classification. Defendant does not inform prospective or actual purchasers of life insurance policies for juveniles of either its use of a "smoker" risk classification for juveniles or its re-underwriting requirements. Id. ¶¶ 27, 28.

## DISCUSSION

**I. Rule 12(b)(6) Standard**

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1609 (2007). The court accepts as true all factual allegations in the complaint, and views them in the light most favorable to the plaintiff. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). While specific factual allegations are not required, however, a plaintiff must provide the grounds of his entitlement to relief beyond mere labels and conclusions; a formulaic recitation of the elements of a cause of action is insufficient. See Twombly, 127 S.Ct. at 1964-65.

In ruling on a motion under Rule 12(b)(6), the Court may consider only the allegations made in the complaint and any facts of which judicial notice may be taken.

See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992).

**II.  Choice of Law**

The parties disagree on the applicable law in this action.  Plaintiff argues that his claims are properly governed by New York law, while Defendant argues that the law of the state where the policy was issued should control:  Ohio for Vanessa Richards' Policy; and West Virginia for Shane Richards' Policy.  In an action based on diversity jurisdiction, the district court applies the choice of law rules of the state in which it sits. See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006).  Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co., (Stolarz), 81 N.Y.2d 219, 223 (1993). While Defendant has asserted a number of conflicts that could ultimately bear on the resolution of this case, the Court does not apply any potentially conflicting aspects of New York, Ohio, or West Virginia law in disposing of the present motion.  The Court therefore need not engage in a conflict of laws analysis, but rather simply applies the law of New York.[3]

**III. Breach of Contract**

To maintain a breach of contract action, Plaintiff must show: (1) the existence of a contract; (2) Plaintiff's performance of the contract; (3) Defendant's breach

---

[3] The Court notes without deciding that were a conflict of laws analysis necessary, the law of the state where the policy was issued (Ohio and West Virginia, respectively) would govern both the contract claims and the tort claims.

4

of the contract; and (4) damages. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). The sole issue before the Court at this time is whether Plaintiff has adequately alleged a breach of the Policies by asserting that Defendant charged him a cost of insurance and provided interest and dividends based on a "smoker" risk classification. Defendant argues that there is no provision of the contract requiring a "non-smoker" classification, and that Defendant charged a cost of insurance less than the maximum rate set by the Policies. The Court finds that Plaintiff's allegations regarding breach of the Policies are sufficient to survive a motion to dismiss.

The Policies state that the cost of insurance will be "based on the sex, attained age, and *rating class* of the insured person" and that the application is part of the contract. Compl. Ex. 1 at Policy pg. 7 (emphasis added). The contract therefore clearly requires that the rating class on which the cost of insurance is based be consistent with the answers Plaintiff provided on the application. If Defendant maintains "smoker" and "non-smoker" rating classes, it may not apply a "smoker" classification to Plaintiff's children for purposes of determining costs and benefits under the Policies when the application indicates that they are non-smokers. While Defendant repeatedly states that there is only a standard juvenile classification, and separate "smoker" and "non-smoker" classes do not exist, that is an issue of fact that the Court cannot resolve on a motion to dismiss. The Complaint pleads facts from which the Court may plausibly infer that a non-smoker rating exists but was denied to policy-holders under the Juvenile Smoker Rate Scheme.

Defendant also argues that contractual language concerning the rating class "merely provides that the insurer must charge similarly situated insureds the same

charges and rates, and may not 'discriminate' among these individuals." Defendant's Reply Brief, 6 n. 9.  Even assuming Defendant's interpretation is entirely accurate, Plaintiff's allegations are sufficient to show a breach when viewed in the light most favorable to him.  Plaintiff's allegations regarding the Juvenile Smoker Rate Scheme support the inference that Defendant not only had a "non-smoker" rating in the abstract, but applied that rating to some non-smoking juveniles.  If Defendant classified some non-smoking juveniles as non-smokers and other non-smoking juveniles as smokers, that would constitute "discrimination" under the contract term as interpreted by Defendant, and would therefore constitute a breach.  Similarly, Plaintiff alleges that non-smoking adults covered by policies purchased when they were juveniles are charged different rates than non-smoking adults covered by policies purchased when they were already adults.  It may be argued that those two types of insureds are not "similarly situated" within the meaning of the contract, but such a determination is premature at this stage.  Plaintiff has stated a breach of contract claim for which relief may be granted, and Defendant's motion to dismiss that claim must be denied.

**IV. Fraudulent Misrepresentation**

A claim for fraudulent misrepresentation requires a showing that, inter alia, "the defendant made a material misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000).  Plaintiff alleges that Defendant's inclusion of the single, Smoking Question on the application constituted an express or implied representation that "the status of the insured as a smoker or non-smoker would be used to determine the premiums, interests, and dividend amounts" associated with the Policies. Compl. ¶ 75.  Plaintiff's allegations do not adequately state a misrepresentation.

6

Asking whether the proposed insured had smoked cigarettes in the last 12 months is plainly not an express representation regarding the effect of the answer to that question. Plaintiff asserts, however, that the application question constitutes an implied representation, quoting Costello v. Costello for the proposition that

> the representation need not be made in terms expressly stating the existence of some fact which does not exist. If a statement be made by a man in such terms as would naturally lead the person to whom it was made to suppose the existence of a certain state of facts, and if such statement be so made designedly and fraudulently, it is as much a fraudulent misrepresentation as if the statement of an untrue fact were made in express terms.

155 Misc. 28, 33 (N.Y. Sup. Ct. 1934). This argument is unpersuasive.

To begin, the cases cited by Plaintiff in support of his implied representation theory are entirely dissimilar from the present matter. Three of the four stand for the proposition that when a party provides a financial instrument or declares a financial benefit to stockholders, there is an implied representation that funds exist to cover the instrument or benefit. See Ottinger v. Bennett, 129 N.Y.S. 819, 825 (1st Dept. 1911) (Miller, J., dissenting), rev'd 203 N.Y. 554 (1911) (adopting dissent of Miller, J.) (declaration of a dividend implies sufficient earnings to pay the dividend); A. Sam & Sons Produce Co. v. Campese, 217 N.Y.S.2d 275, 277 (4th Dept. 1961) ("the act of drawing and delivering a check amounts to a representation that the drawer keeps an account with the drawee and that there are sufficient funds on deposit to meet it."), Matter of Hutchinson, 27 B.R. 247, 250 (Bankr. E.D.N.Y. 1983) (presenting credit card and signing receipt implies "wherewithall [sic] and intent to repay all credit extended"). Presentation of a check or credit card or announcement of a dividend unavoidably incorporates the representation that the relevant funds exist. A question on an insurance application conveys no such necessary representation.

7

Costello is, remarkably, even less apposite. There, the court annulled a marriage in which the once-divorced defendant had done "everything in her power, by her actions and by her conduct, to lead plaintiff to believe that she had never in her life known the married state." Costello, 155 Misc. at 32.[4] Not only was the implied representation the product of an extended deception rather than a single question, the court's judgment relied in large measure on the relationship of trust between two people considering marriage, which has no parallel in this case.

Turning to the Smoking Question itself, asking whether a proposed juvenile insured smokes in an insurance policy application would not "naturally lead to person to whom it was made to suppose" that smoking or non-smoking status would determine the "premiums, interest, and dividend amounts" associated with the policy. The Smoking question could plainly relate to an insurer's decision to issue or not to issue an insurance policy, and does not naturally convey a message about the insurer's rating practices. This is particularly so, given the other questions[5] about risky behavior and health issues that accompanied the single, Smoking Question. No person reading the application could reasonably conclude that the policy would offer differential rates based on answers to these questions, or take any given question as promising such differential rates. As Plaintiff concedes that the Policies and the application constituted the sole

---

[4] The court further found that "by her arts and wiles, [defendant] succeeded in giving plaintiff a false impression." Id. at 35. Defendant is not, so far as the Court is aware, accused of employing any "arts and wiles."

[5] In the Application for Life Insurance, under the heading "Other Information," the applicant (i.e., the parent of the minor child) is asked whether the proposed insured ever had a driver's license suspended for driving under the influence of alcohol or drugs; has flown in an airplane other than as a passenger, engaged in sky diving, or motor racing on land or water (Questions 14-15). The next set of questions asks questions about heart trouble; diabetes; use of mood altering drugs, including heroin and methadone; diagnosis of AIDS. The single question in which Plaintiff's claim rests is Question 18, "In the last 12 months: (a) smoked cigarettes, (b) used any other form of tobacco (give full details)." Plaintiff does not suggest that the standard non-cigarette questions created fraudulent misrepresentations, or serve as the basis for either fraudulent concealment or unjust enrichment.

8

representations, express or implied, made by Defendant, his claim for fraudulent misrepresentation must be dismissed.

Plaintiff challenges this conclusion by asserting that insurance policies are commonly known to provide smoking and non-smoking rating classes. This does not suggest a misrepresentation, however, but rather Plaintiff's pre-existing assumption. Granted, the Smoking Question is consistent with differential rates for smoking and non-smoking juveniles, and it would not enlighten an applicant who already assumed that such rates applied. An insurer does not become liable for fraudulent misrepresentation, however, because it fails to correct Plaintiff's pre-existing assumptions regarding rating policies not set forth in the insurance contract. If such conduct creates liability it is for fraudulent concealment, to which the Court now turns.

**V. Fraudulent Concealment**

"The elements of fraudulent concealment under New York law are: a relationship between the contracting parties that creates a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage." Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005) (citing Congress Financial Corp. v. John Morrell & Co., 790 F.Supp. 459, 472 (S.D.N.Y. 1992)). The sole element in dispute on this motion is the existence of a duty to disclose, which exists where, inter alia, "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" or where one party has made "a partial or ambiguous statement, whose full

9

meaning will only be made clear after complete disclosure…." Id. (internal quotations omitted).[6]  Neither circumstance exists here.

Defendant obviously and unavoidably possessed superior knowledge regarding its rating policies that was not readily available to Plaintiff.  That is insufficient, however, as the facts pled in the Complaint do not support a claim that Defendant knew Plaintiff was acting on the basis of mistaken knowledge.  The only communication between Plaintiff and Defendant was Plaintiff's submission of the completed applications.  Those applications provided no basis for knowledge by Defendant as to what Plaintiff believed regarding its rating policies.  Plaintiff cannot state a claim for fraudulent concealment based on Defendant's superior knowledge.

Defendant also made no ambiguous or partial statement requiring fuller disclosure.   A question on an insurance application is simply not such a statement.  If it were, an insurer would be obliged to explain the relevance of every question on an application to their overall rating system in order to avoid liability for fraudulent concealment.  The law does not require so much.[7]  Accordingly, Plaintiff cannot adequately allege a duty to disclose on the part of Defendant, and the motion to dismiss his fraudulent concealment claim must be granted.

**VI. Unjust Enrichment**

A claim of unjust enrichment cannot be sustained where a valid written contract governs the relationship between the parties.  Whitman Realty Group, Inc. v.

---

[6] A fiduciary relationship also creates a duty to disclose, but Plaintiff concedes that there is no such relationship between the parties.

[7] As with his fraudulent misrepresentation claim, Plaintiff's opposition relies on cases that bear no resemblance to the dispute at bar.

Galano, 838 N.Y.S.2d 585, 588 (2d Dept. 2007) ("Recovery for unjust enrichment is barred by a valid and enforceable contract."). Here, it is undisputed that a valid written contract exists and any enrichment which occurred was solely pursuant to the terms of that contract. While Fed. R. Civ. P. 8(e)(2) allows Plaintiff to plead in the alternative, where the alleged inequitableness of Defendant's enrichment is indistinguishable from the alleged breach of contract, the Court need not delay dismissal of the claim until discovery demonstrates what both parties expressly agree to be the case. Accordingly, Plaintiff's claim for unjust enrichment is dismissed.

## CONCLUSION

Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and unjust enrichment are dismissed with prejudice. Plaintiff's breach of contract claim is therefore the sole remaining claim in this action. The parties shall confer and submit a civil case management plan to the Court by November 19, 2007. The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
      October 18, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

11

Galano, 838 N.Y.S.2d 585, 588 (2d Dept. 2007) ("Recovery for unjust enrichment is barred by a valid and enforceable contract."). Here, it is undisputed that a valid written contract exists and any enrichment which occurred was solely pursuant to the terms of that contract. While Fed. R. Civ. P. 8(e)(2) allows Plaintiff to plead in the alternative, where the alleged inequitableness of Defendant's enrichment is indistinguishable from the alleged breach of contract, the Court need not delay dismissal of the claim until discovery demonstrates what both parties expressly agree to be the case. Accordingly, Plaintiff's claim for unjust enrichment is dismissed.

## CONCLUSION

Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and unjust enrichment are dismissed with prejudice. Plaintiff's breach of contract claim is therefore the sole remaining claim in this action. The parties shall confer and submit a civil case management plan to the Court by November 19, 2007. The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
       October 18, 2007

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge