USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07 APR 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY E. RICHARDS, on behalf of himself and all others similarly situated,

        Plaintiff,

- against –

AXA EQUITABLE LIFE INSURANCE COMPANY f/k/a/ EQUITABLE VARIABLE LIFE INSURANCE COMPANY,

        Defendant.

06 CV 3744 (PAC)

[~~PROPOSED~~]
ORDER OF DISMISSAL

Pursuant to the Court's Orders of December 5, 2008 (Doc. # 42) and January 30, 2009 (Doc. # 43), the Court hereby dismisses this cause of action with prejudice Plaintiff Larry Richards and without prejudice as to any members of the uncertified, putative class, based upon the Stipulation of Settlement which has been filed and approved by the Court.

DONE this 7th day of April, 2009.

_____
PAUL A. CROTTY,
UNITED STATES DISTRICT JUDGE

cc:    Andrea Bierstein
       Jay Aughtman
       Joel Feldman

## RESOLUTION AGREEMENT

This Resolution Agreement ("Agreement") is entered into by and between Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley firm") and Hanly, Conroy, Bierstein, Sheridan, Fisher & Hayes, LLP ("Hanly firm"), on the one hand, and AXA Equitable Life Insurance Company ("AXA Equitable"), on the other hand (collectively, the "Parties" and/or "Party").

The Parties to this Agreement wish to resolve issues regarding the cost of insurance rates for AXA Equitable's insureds who either are currently under the attained age of twenty ("Juveniles") or were juveniles at the time of issuance of certain life insurance policies ("Juvenile Policies") issued by AXA Equitable. The Beasley firm and Hanly firm have taken the position that AXA Equitable improperly charges smoker rates for Juvenile Policies in violation of their insurance contracts. AXA Equitable denies that it ever charged smoker rates to any of its policyholders while the insured was a juvenile and furthermore denies that it has breached its insurance contracts concerning the same.

In consideration of the respective covenants set forth below, the Beasley firm, Hanly firm, and AXA Equitable agree to the following terms:

1. **Recitals Incorporated:** The foregoing recitals are hereby incorporated by reference herein as part of this agreement between the Parties.

2. **Effective Date:** This Agreement is subject to, and shall become effective upon, approval of the court.

3. **Revised Notice Letter:** On or before 30 days after the Court's order regarding this Agreement, AXA Equitable shall modify the form of its letter (the "notice

letter") that it sends to policyholders with respect to non-variable policies insuring the life of an individual who was under attained age 20 at issuance (or, for the Athena Universal Life I policies (the "AUL Policies"), under attained age 18), giving them the opportunity to elect adult, non-tobacco cost of insurance rates for the AXA Equitable policy. This revised notice letter shall be in the form set forth herein as Exhibit A.

4.   **Special Offer Letter:** On or before 30 days after the Court's order regarding this Agreement, AXA Equitable shall mail a letter to those policyholders who purchased on or after April 10, 1985 and still own a non-variable life insurance policy issued by AXA Equitable, which policy insures a person under attained age 20 (or attained age 18 for insureds covered by one of the AUL Policies) at the time of issuance and which insured had reached attained age 20 (or 18, as the case may be) on the anniversary date of their policy from May 1, 2000 to December 31, 2007, but who did not respond to the notice letter on or prior to the policy anniversary date nearest the insured's 20th birthday (or 18th birthday, as the case may be). This letter will provide these policyholders the opportunity to elect adult, non-tobacco cost of insurance rates for their AXA Equitable policies on a prospective basis in accordance with the following procedure: in order to obtain non-tobacco cost of insurance rates, (1) the owner and insured must within 60 days of the date of the foregoing letter, complete, sign, and return to AXA Equitable a form which truthfully represents that the insured has not used tobacco products within the twelve months immediately preceding his or her execution of this form, and (2) the insured must undergo and pass a urinalysis test to confirm only that the insured has not used tobacco products. No other underwriting, forms, or examinations will be required in order for the policyholder to obtain the adult non-

tobacco cost of insurance rates prospectively for the policy. The letter discussed in this Paragraph shall be in the form attached hereto as Exhibit B. For those letters referenced in this Paragraph which are returned to AXA Equitable as undeliverable, AXA Equitable will perform a good faith, reasonable search to attempt to identify the addressee's current address, and shall advise the Beasley and Hanly firms of said efforts. If AXA Equitable is able to obtain a current address for a particular policyholder, then it will re-mail the foregoing letter to that address. Otherwise, the AXA Equitable will note on its records that it was not able to locate a current address for the particular policyholder.

5. **Consideration:**

AXA Equitable shall pay to the Beasley firm and Hanly firm a total of Two Hundred Thirty Thousand Dollars ($230,000) by wire transfer. This $230,000 shall be the only monetary payment AXA Equitable shall be required to make pursuant to this Agreement. The Beasley and Hanly firms have brought this issue to the attention of AXA Equitable, have worked to develop the letters referenced herein, have hired and consulted experts on these issues and spent attorney time addressing the issues referenced herein.

6. **Date Of Agreement:** This Agreement is entered into as of the 10th day of February, 2009.

7. **Integration And Drafting:** The Parties agree that this Agreement is clear and unambiguous, that it was drafted at arm's length and sets forth the entire agreement among the Parties with respect to its subject matter, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or

executed. The Parties agree that the Agreement was entered into voluntarily and without any coercion. The Parties further agree that no party shall be deemed to have drafted this Agreement.

8. **Modification**: This Agreement is not subject to modification without the written consent of all Parties.

9. **Waiver/Severability**: The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior or subsequent to, or contemporaneous with, this Agreement. The Parties further agree that each provision or term hereof is intended to be severable from the others so that, if any particular provision or term thereof is determined to be illegal or invalid for any reason whatsoever, that illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

10. **Confidentiality**: The Parties shall keep the existence and terms of this Agreement strictly confidential and not disclose the terms of the Agreement to anyone. The Parties also shall not disclose to anyone the fact or substance of the negotiations leading up to this Agreement. The Parties agree that this confidentiality provision is a material term of this Agreement, and that any breach of any portion of this provision shall constitute a material breach of this Agreement. A breach of this provision shall entitle the offended Party to any and all of the remedies available for a material breach of contract, including, without limitation, the right to rescind this Agreement and recover any consideration provided hereunder. This nondisclosure provision does not prohibit or restrict the Parties from responding to an inquiry about this settlement or its underlying facts and circumstances by any self-regulatory organization, governmental agency, or as

required by law. Further, the Parties shall not be prohibited from disclosing the Agreement to their accountants, auditors or to enforce the terms of this Agreement.

11. **Agreement Executable In Counterparts**: This Agreement may be executed in actual or telecopied counterparts, each of which when so executed and delivered shall be an original. The executed signature page from each actual counterpart may be joined together and attached to one such original and shall constitute one and the same instrument.

12. **AXA Equitable's Denial Of Wrongdoing**: AXA Equitable expressly denies any wrongdoing and does not admit or concede any actual or potential fault, wrongdoing, or liability based on the issues covered herein.

13. **No Evidence**: In no event shall this Agreement, any of its provisions, or any negotiations, statements, or proceedings relating to it in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in any other action, or in any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or proceedings shall be construed as, offered as, used as, or deemed to be evidence or an admission or concession by any person of any matter, including but not limited to any liability or wrongdoing on the part of AXA Equitable or as a waiver by AXA Equitable of any applicable defense, including without limitation any applicable statute of limitations.

14. **Tax Consequences**: No opinion concerning the tax consequences of this Agreement is given or will be given by any Party. Tax obligations, if any, resulting from

this settlement, and the determination thereof, are the sole responsibility of each Party, respectively.

15. **Notice**: Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by next-day (except Sunday) express delivery service or by facsimile transmission as follows:

If to AXA Equitable, then to:

> Joel S. Feldman
> SIDLEY AUSTIN LLP
> One South Dearborn Street
> Chicago, IL 60603
> Tel: (312) 853-7000
> Fax: (312) 853-7036; and
>
> Eileen Stassa
> AXA EQUITABLE LIFE INSURANCE CO.
> 1290 Avenue of the Americas, 12th FL
> New York, New York 10104
> Tel: (212) 314-3937
> Fax: (212) 707-7475

If to Beasley Firm and the Hanly Firm, then to:

> Dee Miles
> Joseph H. Aughtman
> BEASLEY, ALLEN, CROW, METHVIN,
> PORTIS & MILES, P.C.
> P.O. Box 4160 (36103)
> 218 Commerce Street
> Montgomery, AL 36104
> Tel: (334) 495-1196
> Fax: (334) 954-7555; and
>
> Andrea Bierstein
> HANLY CONROY BIERSTEIN SHERIDAN
>   FISHER & HAYES LLP
> 112 Madison Avenue, 7th floor
> New York, New York 10016
> Tel: (212) 784-6400
> Fax: (212) 213-5949

15. **Governing Law**: This Agreement and any ancillary agreements shall be governed by, and interpreted according to, the law of the state of New York, excluding its conflict of laws provisions.

16. **Parties Bound**: This Agreement shall be binding upon and inure to the benefit of the Parties.

Dated: __2·12__, ~~2008~~ 2009

| BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C. | AXA EQUITABLE LIFE INSURANCE CO. |
|---|---|
| _/s/ Jay Aughtman_<br>For the Beasley Firm | By: _/s/ Charles C. Marino_<br>Its |

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP

_/s/_
For the Hanly Firm

275008

## HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP
### 112 MADISON AVENUE
### NEW YORK, NEW YORK 10016-7416
### www.hanlyconroy.com

ANDREA BIERSTEIN (NY & MA)
(212) 784-6403
JAYNE CONROY (NY, DC & MA)
(212) 784-6402
CLINTON B. FISHER (NY & DC)
(212) 784-6446
PAUL J. HANLY, JR. (NY & TX)
(212) 784-6401
STEVEN M. HAYES (NY)
(212) 784-6414
THOMAS I. SHERIDAN, III (NY)
(212) 784-6404

TELEPHONE (MAIN)
(212) 784-6400

TELECOPIER
(212) 784-6420

EMAIL
abierstein@hanlyconroy.com

**By Hand**

April 3, 2009

Hon. Paul A. Crotty
United States District Judge
United States Courthouse
500 Pearl Street, Room 735
New York, New York  10007-1312

    Re:    *Richards v. AXA Equitable Life Ins. Co.*, 06 CV 3744

Dear Judge Crotty:

    My firm, along with Beasley, Allen, Crow, Methvin, Portis, & Miles, represents plaintiff Larry Richards in the above-referenced action. Your Honor may recall that the parties previously notified the Court that they had reached a settlement in principle of this action and requested additional time to consummate that settlement. The settlement has now been completed.

    This action was filed as a class action, but has been settled on an individual basis only. Under the terms of the settlement, the claims of the named plaintiff are to be dismissed with prejudice, while those of the absent class members are to be dismissed without prejudice. While the settlement provides for relief to the putative class in the form of modified letters and a second chance limited time opportunity for certain policyholders to obtain a prospective rate reduction, no release of any kind is being provided by the putative class. The terms of the settlement are specified in the enclosed Resolution Agreement. Because the action was originally filed as a class action (although not settled on that basis) and because, pursuant to the Resolution Agreement, my firm and the Beasley Allen firm would be compensated by the defendant, we and defendant respectfully request that the Court approve and so-order the terms of the enclosed Resolution Agreement, and further enter the enclosed order dismissing the claims of the named plaintiff with prejudice

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP

Hon. Paul A. Crotty
April 3, 2009

Page 2

and the claims of the class members without prejudice.

Sincerely,

Andrea Bierstein

Encs.

cc: Joel Feldman, Esq. (via email)
    Bruce Braverman, Esq. (via email)